Jeremy C. Lieb (WSB #47219)
Erik Grafe (AK Bar #0804010) (*pro hac vice* pending)
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK  99501
T: 907.277.2500
F: 907.277.1390
E: jlieb@earthjustice.org
  egrafe@earthjustice.org

Kristen L. Boyles (WSB #23806)
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA 98104
T: 206.343.7340
F: 206.343.1526
E: kboyles@earthjustice.org

*Attorneys for Citizens for Clean Air, a project of*
*Alaska Community Action on Toxics, and Sierra Club*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITIZENS FOR CLEAN AIR, a project of ALASKA COMMUNITY ACTION ON TOXICS, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW WHEELER, in his official capacity as Acting Administrator of the United States Environmental Protection Agency, and CHRIS HLADICK, in his official capacity as Regional Administrator of the United States Environmental Protection Agency Region 10, <br><br> Defendants. | Case No. 2:18-cv-01803 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMPLAINT
(Case No. 2:18-cv-01803)

**INTRODUCTION**

1.      The Fairbanks Northstar Borough ("Fairbanks" or "the Borough") has the worst fine particulate matter ("PM-2.5") air pollution in the nation — with levels spiking far in excess of the next most-polluted area and over twice the recommended limit for unhealthy air.  Federal Defendants have known about Fairbanks's harmful PM-2.5 pollution for more than a decade, but they have repeatedly failed to take action mandated by the Clean Air Act to address the problem. Most recently, they failed to make a completeness determination regarding the state of Alaska's failure to submit a timely proposed state implementation plan ("SIP") addressing requirements triggered by EPA's designation of Fairbanks as a 2006 24-hour fine particulate matter "serious" nonattainment area.  Due in part to Defendants' ongoing delay, the people of Fairbanks, including children and the elderly, continue to be endangered by the harms of PM-2.5 exposure.

2.      The Federal Government recognizes the dangers that PM-2.5 exposure poses to the people of Fairbanks.  Under the Clean Air Act, the U.S. Environmental Protection Agency ("EPA") regulates PM-2.5 pollution, imposing relevant 24-hour National Ambient Air Quality Standards ("NAAQS").  62 Fed. Reg. 38,652 (July 18, 1997) (adopting 24-hour NAAQS for PM-2.5); 71 Fed. Reg. 61,144 (Oct. 17, 2006) (codified at 40 C.F.R. § 50.13) (strengthening standards).

3.      EPA designated the Borough a nonattainment area with respect to the 2006 24-hour NAAQS for PM-2.5 in November 2009.  74 Fed. Reg. 58,688, 58,696, 58,702 (Nov. 13, 2009).

4.      Since 2009, EPA has continued to document that the Borough has some of the worst episodic PM-2.5 pollution in the nation, with ambient air concentrations frequently in excess of the NAAQS for PM-2.5—currently by more than any other previously designated

COMPLAINT
(Case No. 2:18-cv-01803)                          1

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

1   nonattainment area.  *See* Exhibit 1 (EPA, *PM$_{2.5}$ Design Values, 2017* at tbl. 1b ("Areas

2   Previously Designated Nonattainment for the 2006 PM2.5 24-hour NAAQS") (July 23, 2018)).

3       5.      However, EPA has failed in its duties to protect the families of Fairbanks from

4   fine particulate matter pollution.  EPA has previously missed three related deadlines in the

5   Borough's Clean Air Act process, resulting in three previous suits before this Court.  *See*

6   Compl., *Citizens for Clean Air v. McCarthy*, No. 2:16-cv-01594-RAJ (W.D. Wash. 2016), ECF

7   No. 1; Compl., *Citizens for Clean Air v. McCarthy*, No. 2:16-cv-00857-JCC (W.D. Wash. 2016),

8   ECF No. 1; Compl., *Citizens for Clean Air  v. McCarthy*, No. 2:14-cv-00610-MJP (W.D. Wash.

9   2014), ECF No. 1.

10      6.      EPA has missed yet another deadline to enforce the Clean Air Act in Fairbanks.

11  Following EPA's reclassification of the Borough as a "serious" nonattainment area in May 2017,

12  82 Fed. Reg. 21,711, 21,712 (May 10, 2017), the state of Alaska was required to submit a serious

13  area PM-2.5 SIP no later than December 31, 2017, addressing the more stringent requirements of

14  that designation.  40 C.F.R. § 51.1003(b)(2)(ii).  The state of Alaska failed to submit a serious

15  area PM-2.5 SIP.  Due to this failure, the Clean Air Act required EPA to make a finding of

16  failure to submit by June 30, 2018.  42 U.S.C. § 7410(k)(1)(B).  Such an EPA finding would start

17  the clock on a two-year deadline for Alaska to submit a compliant SIP or for the EPA to prepare

18  a federal plan.  42 U.S.C. § 7410(c)(1).  It would also set 18-month and two-year deadlines after

19  which certain sanctions will be imposed if Alaska fails to submit a compliant SIP.  42 U.S.C. §

20  7509.  To date, EPA has not made the required finding.

21      7.      Accordingly, Plaintiffs CITIZENS FOR CLEAN AIR, a project of ALASKA

22  COMMUNITY ACTION ON TOXICS, and SIERRA CLUB, bring this action to compel

23  Defendant ANDREW WHEELER, in his official capacity as Acting EPA Administrator, and

24

25  COMPLAINT
    (Case No. 2:18-cv-01803)                    2

26

Defendant CHRIS HLADICK, in his official capacity as Regional Administrator of EPA Region 10, to perform their mandatory duties to ensure that the Federal Government provides the residents of the Borough the protections guaranteed under the Clean Air Act.

### JURISDICTION

8.    The Court has jurisdiction over this action to compel the performance of EPA's non-discretionary duties under the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(a), and pursuant to federal question jurisdiction, 28 U.S.C. § 1331.  The Court also has authority to order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### NOTICE

9.    On October 10, 2018, Plaintiffs provided EPA written notice of the claim stated in this action, as required by 42 U.S.C. § 7604(b)(2).  *See* Exhibit 2 (J. Lieb, counsel for Plaintiffs, Letter to Andrew Wheeler, Acting Adm'r of EPA (Oct. 10, 2018)).  A period of sixty days has elapsed since EPA was notified of Plaintiffs' claim.  *See* 42 U.S.C. § 7604(b)(2).

### VENUE

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).  Defendant EPA resides in this judicial district.  EPA Region 10, which has authority over Alaska, is headquartered in Seattle, Washington.  This civil action is brought against officers of the United States acting in their official capacities, and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Western District of Washington.  Further, because EPA Region 10 is located within King County, assignment to the Seattle Division is proper under Civil Local Rule 3(d)(1).

### PARTIES

11.    Plaintiff CITIZENS FOR CLEAN AIR, a project of ALASKA COMMUNITY ACTION ON TOXICS, is a coalition of local community members and citizens' groups in

COMPLAINT
(Case No. 2:18-cv-01803)                    3

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

1   Fairbanks, Alaska who are committed to cleaning up the air while keeping everyone warm in the

2   winter.  The coalition is a project of Alaska Community Action on Toxics, a non-profit

3   environmental health research and advocacy organization whose mission is to assure justice by

4   advocating for environmental and community health.

5          12.     Plaintiff SIERRA CLUB is a national nonprofit organization with 67 chapters and

6   over 780,000 members dedicated to exploring, enjoying, and protecting the wild places of the

7   Earth; to practicing and promoting the responsible use of the Earth's ecosystems and resources;

8   to educating and enlisting humanity to protect and restore the quality of the natural and human

9   environment; and to using all lawful means to carry out these objectives.  The Alaska Chapter of

10  the Sierra Club has over 1,800 members, including members in the Borough.

11         13.     Plaintiffs' members live, raise their families, work, recreate, and conduct

12  educational, advocacy, and other activities in the Borough.  They are adversely affected by

13  continuing exposure to levels of PM-2.5 pollution that exceed the national, health-based

14  standards for 24-hour concentrations of PM-2.5 established under the Clean Air Act.  The

15  adverse effects of such pollution include actual or threatened harm to their health; their families'

16  health; their professional, educational, and economic interests; and their aesthetic and

17  recreational enjoyment of the environment in the Borough.

18         14.     EPA's failure to timely perform the mandatory duties described in this Complaint

19  has injured and continues to injure the interests of Plaintiffs and their members.  The relief

20  requested in this lawsuit would redress these injuries by compelling EPA to take the action

21  mandated by Congress in the Clean Air Act's requirements for addressing and improving air

22  quality in areas violating national air quality standards, such as the Borough.

23

24

25  COMPLAINT
    (Case No. 2:18-cv-01803)          4

26

15.     Defendant ANDREW WHEELER is sued in his official capacity as the Acting

Administrator of EPA.  He is responsible for taking various actions to implement and enforce the

Clean Air Act, including the mandatory duty at issue in this case.

16.     Defendant CHRIS HLADICK is sued in his official capacity as EPA Regional

Administrator for Region 10.  He is responsible for implementing and enforcing the Clean Air

Act in EPA Region 10, which includes the Borough.

## STATUTORY FRAMEWORK

17.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war

against air pollution in the United States with a view to assuring that the air we breathe

throughout the Nation is wholesome once again."  H.R. Rep. No. 91-1146, at 1 (1970), *reprinted*

*in* 1970 U.S.C.C.A.N. 5356, 5356.  Consistent with these goals, the Act requires EPA to set

NAAQS for certain pollutants, "the attainment and maintenance of which . . . are requisite to

protect the public health" with "an adequate margin of safety," 42 U.S.C. §§ 7409(a)-(b), and to

designate areas with air pollution levels that exceed the national standards as "nonattainment"

areas, 42 U.S.C. § 7407(d)(1).

18.     The Clean Air Act requires that a nonattainment area that has been designated as

"moderate" must attain the NAAQS "as expeditiously as practicable but no later than the end of

the sixth calendar year after the area's designation as nonattainment."  *See* 42 U.S.C. §

7513(c)(1) (stating rule for setting attainment dates for "moderate" PM-10 nonattainment areas);

*see also Nat. Res. Def. Council v. EPA*, 706 F.3d 428, 434-36 (D.C. Cir. 2013) (holding that

subpart four of the Clean Air Act, addressing PM-10 standards extends to PM-2.5 nonattainment

areas).

COMPLAINT
(Case No. 2:18-cv-01803)                         5

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

1    19.    The Administrator shall determine whether a "moderate" nonattainment area has

2  attained the NAAQS by its attainment date within six months following that attainment date.  42

3  U.S.C. § 7513(b)(2).  If the Administrator determines that the NAAQS was not attained, the area

4  shall be reclassified by operation of law as a "serious" nonattainment area.  *Id.* § 7513(b)(2)(A).

5  The Administrator must then publish a notice in the Federal Register no later than six months

6  following the attainment date identifying the area as having failed to attain and giving notice of

7  the area's reclassification as a "serious" nonattainment area.  *Id.* § 7513(b)(2)(B).

8    20.    The Clean Air Act requires that a nonattainment area that has been designated as

9  "serious" must attain the NAAQS "as expeditiously as practicable but no later than the end of the

10  tenth calendar year after the area's designation as nonattainment."  42 U.S.C. § 7513(c)(2).

11    21.    Once a nonattainment area is reclassified as "serious," "the state(s) shall submit to

12  the EPA a Serious area attainment plan . . . within 18 months from the effective date of

13  reclassification, or 2 years before the attainment date, whichever is earlier."  40 C.F.R. pt.

14  51.1003(b)(2)(ii).

15    22.    The Clean Air Act requires EPA to determine whether any state implementation

16  plan is administratively complete.  42 U.S.C. § 7410(k)(1)(B).  EPA must make this

17  determination "no later than 6 months after the date, if any, by which a State is required to

18  submit the plan or revision."  *Id.*

19    23.    If a state completely fails to submit a required state implementation plan by the

20  deadline, then there is no submittal that may be deemed administratively complete, and EPA

21  therefore must make a determination—and publish notice of that determination in the Federal

22  Register—stating that the state failed to submit an administratively complete state

23  implementation plan.  42 U.S.C. § 7410(k)(1)(B).  Such a determination is referred to as a

24

25  COMPLAINT
   (Case No. 2:18-cv-01803)              6

26

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

1    "finding of failure to submit."  *See Sierra Club v. U.S. Envtl. Prot. Agency*, 671 F.3d 955, 960

2    (9th Cir. 2012).

3    24.     Upon issuing a finding of failure to submit, the Clean Air Act establishes a two-

4    year deadline for EPA either to approve a state implementation plan (subsequently submitted by

5    state authorities to address the deficiency) or to promulgate a federal implementation plan.  42

6    U.S.C. § 7410(c)(1).  When a state implementation plan is required to address nonattainment of

7    an air quality standard, a finding of failure to submit also starts the clock on mandatory sanctions

8    intended to induce states to develop and submit their plan.  More specifically, 18 months after

9    the finding, if the deficiency is not corrected, all proposed new pollution sources within the

10   nonattainment area become subject to a heightened permitting requirement.  *Id.* § 7509(a), (b)(2);

11   40 C.F.R. § 52.31(c), (d).  Twenty-four (24) months after the finding, if the deficiency still is not

12   corrected, a moratorium on federal highway funds also is imposed, with an exemption for safety

13   and mass transit projects.  42 U.S.C. § 7509(b)(1); 40 C.F.R. § 52.31(d).

14   25.     If EPA fails to take a non-discretionary action, such as acting on a state

15   implementation plan submittal or failing to timely issue a "finding of failure to submit," citizens

16   are empowered to seek a court order to compel prompt action.  42 U.S.C. § 7604(a)(2).

17                              **STATEMENT OF FACTS**

18   26.     PM-2.5 refers to fine particles less than or equal to 2.5 micrometers in diameter,

19   including hazardous forms of dirt, soot, smoke, and liquid droplets found in the air.  PM-2.5 is

20   "produced chiefly by combustion processes and by atmospheric reactions of various gaseous

21   pollutants," and "[s]ources of fine particles include . . . motor vehicles, power generation,

22   combustion sources at industrial facilities, and residential fuel burning."  71 Fed. Reg. at 61,145.

23

24

25   COMPLAINT
     (Case No. 2:18-cv-01803)            7

26

27.     The detrimental effects of PM-2.5 on human health are significant.  Numerous scientific studies have linked particle pollution exposure, especially exposure to fine particles, to a variety of problems, including premature death in people with heart or lung disease, non-fatal heart attacks, irregular heartbeat, aggravated asthma, decreased lung function, and increased respiratory symptoms, such as irritation of the airways, coughing, or difficulty breathing, as well as possibly cancer, and reproductive and developmental harms.  *See* Exhibit 3 at 1 (EPA, *Health and Environmental Effects of Particulate Matter (PM)* (Oct. 9, 2018)); Exhibit 4 at 8 (American Lung Association, *State of the Air 2015* (citing EPA, Integrated Science Assessment for Particulate Matter, EPA 600/R-08/139F (Dec. 2009))).

28.     EPA first adopted 24-hour NAAQS for PM-2.5 in 1997.  62 Fed. Reg. at 38,652. In 2006, EPA strengthened these standards, revising the maximum allowed 24-hour average concentration of PM-2.5 from 65 micrograms per cubic meter ($\mu$g/m$^3$) to 35 $\mu$g/m$^3$.  71 Fed. Reg. at 61,144, 61,146.

29.     Fairbanks has some of the worst PM-2.5 pollution in the nation, with ambient air concentrations frequently in excess of the 24-hour NAAQS.  Of all previously designated nonattainment areas for 24-hour PM-2.5, measured by 2015-2017 design values, Fairbanks is the most polluted, with pollution levels more than twice federal limits.  *See* Exhibit 1.

30.     On November 13, 2009, EPA designated the Borough as a nonattainment area with respect to 24-hour PM-2.5 NAAQS.  74 Fed. Reg. at 58,696, 58,702.

31.     At that time, the Borough was a "moderate" nonattainment area.  79 Fed. Reg. 31,566, 31,568 (June 2, 2014) ("[T]he EPA in this notice is identifying the classification of all [PM-2.5] areas currently designated nonattainment for the 1997 and 2006 NAAQS as 'Moderate.'").

COMPLAINT
(Case No. 2:18-cv-01803)                    8

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

32.     The Borough's attainment date for the 24-hour PM-2.5 NAAQS was "no later than the end of the sixth calendar year after the area's designation as nonattainment," 42 U.S.C. § 7513(c)(1), that is, no later than December 31, 2015.  79 Fed. Reg. at 31,570 (stating that the areas identified as moderate under the rule "are subject to a Moderate area attainment deadline under subpart 4 of no later than December 31, 2015."); *WildEarth Guardians v. EPA*, 830 F.3d 529, 541 (D.C. Cir. 2016) (observing that in EPA's 2014 implementation rule "the agency retained the attainment deadline of December 31, 2015").

33.     The Borough failed to achieve attainment by that date, and EPA failed to publish notice in the Federal Register determining that the Borough failed to attain the NAAQS and reclassifying the area as a "serious" nonattainment area within six months, by June 30, 2016.

34.     In response to a lawsuit filed by Plaintiffs in this Court, EPA proposed in December 2016 to determine that Fairbanks was still in nonattainment with the 2006 24-hour PM-2.5 standard and to reclassify the Borough as a "serious" nonattainment area.  81 Fed. Reg. 91,088, 91,089 (Dec. 16, 2016); *Citizens for Clean Air v. Pruitt*, No. 2:16-cv-01594-RAJ (W.D. Wash. 2016), ECF No. 14.

35.     EPA finalized its determination and reclassified Fairbanks as a "serious" nonattainment area on May 10, 2017.  82 Fed. Reg. at 21,712.

36.     As a "serious" nonattainment area, the Borough's attainment date for the 24-hour PM-2.5 NAAQS is "no later than the end of the tenth calendar year after the area's designation as nonattainment," 42 U.S.C. § 7513(c)(2), that is, no later than December 31, 2019.  82 Fed. Reg. at 21,712.

37.     The state of Alaska was required to submit a proposed serious area PM-2.5 SIP addressing the more stringent requirements of that designation "within 18 months from the

COMPLAINT
(Case No. 2:18-cv-01803)                          9

1  effective date of reclassification, or 2 years before the attainment date, whichever is earlier," 40

2  C.F.R. pt. 51.1003(b)(2)(ii).  In this case the earlier date is two years before attainment; the

3  State's plan was due no later than December 31, 2017.  82 Fed. Reg. at 21,712.

4        38.    The state of Alaska failed to submit a serious area PM-2.5 SIP by December 31,

5  2017, and still has not submitted a serious area PM-2.5 SIP as of the filing of this complaint.

6        39.    EPA was required to make a completeness determination regarding the state of

7  Alaska's SIP submission, or a finding of failure to submit, within six months of the submission

8  deadline and no later than June 30, 2018.  42 U.S.C. § 7410(k)(1)(B).

9        40.    EPA failed to issue the required completeness finding by June 30, 2018, and still

10  has not made this finding as of the filing of this complaint.

**CLAIM FOR RELIEF**
**(Clean Air Act: Failure to make mandatory finding of failure to submit)**

11

12        41.    Plaintiffs reallege each and every allegation set forth above, as if fully set forth

13  herein.

14        42.    The deadline for the state of Alaska to submit a serious area PM-2.5 SIP for the

15  Fairbanks North Star Borough was December 31, 2017.

16        43.    The state of Alaska has not submitted a serious area PM-2.5 SIP for the Borough.

17        44.    Pursuant to 42 U.S.C. § 7410(k)(1)(B), EPA had a mandatory duty to make a

18  finding of failure to submit within six months of the submission deadline and no later than June

19  30, 2018.

20        45.    EPA has failed to perform this mandatory duty.

21        46.    Accordingly, EPA has been in continuous violation of the Clean Air Act, 42

22  U.S.C. § 7410(k)(1)(B), since June 30, 2018, or earlier.

23

24

25  COMPLAINT                              10
    (Case No. 2:18-cv-01803)

26

*Earthjustice*
*441 W 5th Avenue, Suite 301*
*Anchorage, AK 99501*
*907.277.2500*

47.     EPA's Clean Air Act violation constitutes a "failure of the Administrator to perform [an] act or duty under [chapter 85] which is not discretionary with the Administrator," within the meaning of the Clean Air Act's citizen suit provision.  42 U.S.C. § 7604(a)(2).  The violation is ongoing.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

48.     Declare that the Administrator is in violation of the Clean Air Act with regard to his mandatory, nondiscretionary duty under 42 U.S.C. § 7410(k)(1)(B) to make a finding that the state of Alaska has failed to submit a serious area nonattainment SIP addressing 24-hour concentrations of PM-2.5 in the Fairbanks North Star Borough;

49.     Issue an injunction requiring the Administrator to make and publish in the Federal Register a finding of failure to submit, as required by law;

50.     Retain jurisdiction of this matter until such time as EPA has complied with its non-discretionary duties under the Clean Air Act;

51.     Award to Plaintiffs their reasonable costs of litigation, including attorneys' fees and expert witness fees; and

52.     Grant such further relief as the Court deems just and proper.

Respectfully submitted this 14th day of December, 2018.

*s/ Jeremy C. Lieb*

Jeremy C. Lieb (WSB #47219)
Erik Grafe (AK Bar #0804010) (*pro hac vice* pending)
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK  99501
T: 907.277.2500
F: 907.277.1390
E: jlieb@earthjustice.org
   egrafe@earthjustice.org

COMPLAINT
(Case No. 2:18-cv-01803)                    11

1

2

3

4

Kristen L. Boyles (WSB #23806)
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA 98104
T: 206.343.7340
F: 206.343.1526
E: kboyles@earthjustice.org

*Attorneys for Citizens for Clean Air, a project of Alaska Community Action on Toxics, and Sierra Club*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT
(Case No. 2:18-cv-01803)

12